COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


QIBLA ANGEL

v.      Record No. 0578-08-2                    MEMORANDUM OPINION*
                                                        PER CURIAM
PRINCE GEORGE DEPARTMENT                        SEPTEMBER 23, 2008
   SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Jr., Judge

(John A. Kirkland; The Law Offices of David L. Cloninger, on
briefs), for appellant.  Appellant submitting on briefs.

(Joan M. O'Donnell; Rosalyn P. Vergara, Guardian *ad litem* for the
minor children, on brief), for appellee.  Appellee and Guardian *ad
litem* submitting on brief.


Qibla Angel appeals the termination of her parental rights to her four children pursuant to

Code §§ 16.1-283(B)(2)(a) and 16.1-283(C)(2).[1]  Angel argues the evidence was insufficient to

prove that her mental or emotional illness was of such severity that there was no reasonable

expectation that she would be able to undertake the care of her children.  Angel also argues the

evidence was insufficient to prove that she had been unable, within a reasonable period of time, to

remedy substantially the conditions which led to the children's foster care.  We affirm the trial

court's decision terminating Angel's parental rights pursuant to Code § 16.1-283(C)(2).  Since we

affirm pursuant to subsection C, we need not address Angel's arguments regarding the termination

of her parental rights pursuant to subsection B.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The orders terminating Angel's rights cited Code § 16.1-283(C)(1); however, the parties
agree that this was a clerical error and that Angel's rights were terminated pursuant to Code
§ 16.1-283(C)(2).

BACKGROUND[2]

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that prior to the placement of Angel's four children in foster care, the children were living with Angel and George Angel, her husband and the children's stepfather (stepfather), in military housing in Fort Lee, Virginia. In early December 2006, the military police moved stepfather into military barracks following a domestic dispute. On December 8, 2006, the military police went to the home to gather stepfather's belongings and the military police arrested Angel for assaulting a police officer and obstruction of justice.[3] Angel made unsubstantiated allegations against the stepfather, precluding the possibility of leaving the children with stepfather during her incarceration. The military police contacted the Prince George Department of Social Services (DSS) and DSS contacted the children's maternal grandmother (grandmother) in Florida, but she was unable to give a definite time or date when she could come to Virginia to care for the children. DSS then sought emergency removal of Angel's children because they were without parental care caused by the unreasonable absence or physical incapacity of Angel.[4]

On December 14, 2006, the Prince George County Juvenile and Domestic Relations District Court (J&DR court) entered preliminary removal orders for the children and ordered Angel to

---

[2] DSS presented its evidence at trial by way of an oral proffer, and the parties filed an agreed statement of facts in lieu of a transcript. This type of record serves as a poor substitute for witness testimony and a written transcript. Notwithstanding these limitations, the facts recited below are taken from the agreed statement of facts filed in lieu of a transcript, and the pleadings and orders filed with the lower courts, which the parties, in that written statement, agreed were properly admissible as evidence.

[3] Angel was not convicted of any crimes pertaining to the December incident.

[4] The children each have separate fathers, all of whose parental rights were terminated upon separate petitions.

participate in a psychological evaluation within sixty days. Angel failed to timely complete the psychological evaluation. On February 15, 2007, the J&DR court entered adjudicatory orders for abuse and neglect. Angel appealed the adjudicatory orders for abuse and neglect and on April 16, 2007, the circuit court made similar findings.

In January 2007, the initial goal of the foster care service plan was reunification with Angel. Angel was required to complete a psychological evaluation, seek and maintain employment for six months, cooperate with DSS and Fort Lee social services, follow through with any recommendations, report any changes to DSS, and visit the children.

In March 2007, Zina Gaines, a social worker for DSS, made the appointment for Angel's psychological evaluation and drove Angel to the appointment. James A. Correll evaluated Angel and diagnosed her with adjustment disorder with depressed mood and antisocial personality disorder. Correll's evaluation stated that Angel was "estranged" from stepfather and found that Angel's behavior was pervasively influenced by her relationships with men. Correll's evaluation did not have any specific recommendation for services, but stated that Angel would require a "great deal of monitoring and supervision if any consideration is going to be given about returning her children to her care."

Angel had access to services at Fort Lee, and Gaines received a letter from Vernita Valentine, a social worker at Fort Lee social services, indicating that Angel failed to comply with recommendations for service. Angel did not obtain employment and had not provided information to DSS on how she would provide shelter, food, and clothing for the children. Angel visited her children on a regular basis, but made no financial contributions for their care. The July 8, 2007 review of the foster care service plan found that one barrier to Angel achieving the goal of reunification with her children was the lack of proof of her living situation. The review stated that DSS wanted "to know that she does and will have housing once the children are returned home,

since she and her husband, who is active military, are separated." The review also stated that stepfather was contemplating divorce.

At the termination hearing, Angel testified that she remained in the marital home at Fort Lee until August 2007 and then spent a month in a motel while stepfather continued to live in the barracks at Fort Lee. Angel testified stepfather moved to Fort Stewart, South Carolina and he was scheduled to report to a military base in Missouri in April 2008. Angel testified that she and stepfather had jointly signed a lease on property in Petersburg, Virginia, but she also testified that she had "no address." At the termination hearing, Angel testified that she and the children could live with grandmother in Florida,[5] or she and the children could live with stepfather in Missouri, or she could lease grandmother's house in Florida, or the children could stay with grandmother during the school year and with her during the summer. Angel testified that stepfather could financially support her and her children. At the time of the termination hearing, Angel was not employed and she never provided DSS with information on how she planned to provide shelter, clothing, and food for the children.

In terminating Angel's parental rights, the trial court found that Angel failed to comply with the foster care service plan, that her psychological diagnosis interfered with her ability to parent the children, that Angel's marriage was chaotic, and that Angel was unable to demonstrate housing or income.

## SUFFICIENCY OF THE EVIDENCE

Angel argues the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(2) because there was no evidence that she without good cause, has been unable

---

[5] In August 2007, the grandmother filed petitions for custody of the children, but at the time of the termination hearing, she had not completed the home study and had only seen the children twice since their placement in foster care. The J&DR court changed the goal to adoption in August 2007.

within a reasonable period of time to remedy substantially the conditions which led to the foster care. Angel contends that the psychological evaluation made no recommendations, that she does not need to be employed because stepfather can financially support her and her children, that she cooperated with DSS and Fort Lee social services, and that she regularly visited her children.

The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). It is well settled that "[w]hen addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Id.

Code § 16.1-283(C)(2) provides, in pertinent part, that

> The residual parental rights of a parent . . . of a child placed in foster care . . . may be terminated if the court finds . . . that is in the best interests of the child and that:
>
> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
>
> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services.

Toms v. Hanover Dept. of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation omitted).

- 5 -

DSS took custody of the children because no family member could care for them after Angel's arrest arising from a domestic dispute. Prior to regaining custody of her children, DSS required Angel to obtain a psychological evaluation, required her to cooperate with DSS and Fort Lee social services, and required her to provide information on how she would provide shelter, food, and clothing for her children. Angel outlined four options to provide shelter for her children, and all four plans relied upon stepfather or grandmother. Parents frequently rely upon family members for emotional and financial help with their children, but in this case, there was insufficient evidence to show the family members were willing to provide such help to Angel.

As to Angel's assertion that stepfather would help, the psychological evaluation, the foster care plan reviews, and the petition for termination all stated that Angel "remains separated" from stepfather and further described stepfather as her "estranged husband," who may be contemplating divorce. There was no evidence stepfather attended the termination hearing, and there was no evidence from him that he was willing to help Angel. The trial court heard the evidence of Angel's relationship with stepfather and necessarily determined her testimony that stepfather was willing to help with the children was incredible, which is supported by the trial court's finding that Angel's marriage was chaotic.

As to Angel's assertion that grandmother would help, grandmother first knew of the children's placement with DSS in December 2006, and during the following eight months, grandmother did not take any meaningful steps to assume care and custody of the children. Grandmother waited until the J&DR court changed the goal to adoption before she showed any willingness to help Angel. There is no evidence grandmother attended the termination hearing and, except for Angel's testimony that grandmother would help, there was no evidence that grandmother was in fact willing to help Angel care for the children. The trial court necessarily found Angel's testimony that grandmother would help with the children was incredible, which is

supported by grandmother's failure to take any meaningful steps to help assume the care of the children.

Although Angel testified she and stepfather had jointly signed a lease on property in Petersburg and stepfather paid the rent, Angel testified she had no address. Angel also failed to include the Petersburg property as one of the options as a means to provide shelter for her children. Based upon a review of the record, DSS presented clear and convincing evidence that Angel was unwilling or unable to remedy her problems and to provide shelter, food, and clothing for her children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the trial court did not err in terminating Angel's parental rights pursuant to Code § 16.1-283(C)(2). We affirm the trial court's judgment, and we remand with directions to correct the clerical errors in the final orders.

Affirmed.